Good morning, Your Honor. My name is William Broberg, and I represent Mr. Ceja-Prado on appeals to this court. If it's agreeable, I'd like to reserve two minutes of my time for rebuttal. This case involves a guilty plea to one count of conspiracy to distribute methamphetamine. The appellant raises three issues. Can you tell me what authority you have on the subject of, are there any cases where in the district court, a party doesn't present the facts that show a lack of jurisdiction, or even more, presents facts that show there is jurisdiction, and that then on appeal, we can ignore those facts and accept different facts? Are you referring to the issue about the motion to remand for determination of age? Yes. Your Honor, the authority for that would be, I think, that the court has to satisfy itself that it has subject matter jurisdiction in every case. That's a general proposition, but there's at least one area where we have a case. There are cases that suggest that if the facts are established one way in the district court as to jurisdiction, we don't re-examine those facts on appeal and take new facts, or even remand for new facts, that the record is made. I wonder whether you have any authority that suggests that you can show on appeal that factual record is wrong, whether or not it's the party that creates it is the one that's complaining about it. Are there any cases? Yes, there is. In fact, Your Honor, I can submit that pursuant to Federal Rule of Appellate Procedure 28J. The reason why I say that is because that motion was denied. I did not brief that in the opening brief. I wasn't sure that this panel would want to hear. I thought that that had been the case. Well, I thought the appellate commissioner said that it could be considered by the panel. I'm sorry? I thought the appellate commissioner, in rejecting the motion, said that it could be presented to the panel. Oh, I didn't see that in the order, Your Honor. I mean, I would assume that Your Honors could certainly consider anything that you want. There is a case from the Eighth Circuit that presents a completely different way of dealing with this issue. It's very analogous facts. And unfortunately, because I did believe the appellate commissioner's order was conclusive on that issue, I unfortunately don't recall the name, but certainly could immediately, after argument, run it down. And I think you can submit that with a 28J. Yes, I will. So, in other words, if I understand you, you're not really prepared to argue that orally this was an issue? I didn't. I assumed that the appellate commissioner's order was conclusive on that, and therefore I did not brief it in my O.C. brief, Your Honor. Well, you did in a footnote. I'm sorry? You did in a footnote. Well, I wanted you all to understand that, and before I made a statement of jurisdiction, I had to, you know, I had to say what my belief was as to this court's jurisdiction, and that was all I was trying to do. Okay. But you're correct that a jurisdictional issue doesn't have to be raised by the court, because we have an obligation to determine jurisdiction. And that should be the rule, because otherwise people could concede or could agree on subject matter jurisdiction, and that shouldn't be the rule. Our principal contentions here all are clustered around the plea revision hearing. We've raised three contentions. One is that there was a modification to the plea agreement at issue here, because the plea agreement involved what I've termed a mutual material mistake of fact that none of the parties nor the court realized at the plea revision hearing. That was cured, which would have resulted in a longer guideline range. Wasn't the revision all to the benefit of your client? Well, I agree. At first glance, that would seem why. But yes, second or third glance as well. Okay. I mean, at least that it was for the benefit of your client. Well, I don't know. I'm not saying it's as close as of your legal argument, but clearly benefited your client. At fourth glance, what I would say is imagine if instead of being able to reform that by stipulation, just the attorneys. What's important here is my client walks into court and he says, you know, the judge says, are you satisfied? What's your attorney's name? I don't know my attorney's name. Are you satisfied with his performance? Well, I want you to, you know, he says to the judge, there was this 120-month offer. He said he was going to come back to the jail. He didn't come back to the jail. The judge does no follow-up questions. That's the backdrop of this mistake in the plea agreement. If the plea agreement, the modification was subject to Rule 11, my client came to court, there's a mistake, sir. Is this really what you wanted to do? What would have been revealed to him was that mistake. He was already having questions about whether his counsel, you know, this thing with the 120-month offer, rejecting it, not using Rule 11 and not involving the defendant on the modification of this agreement hides that mistake from the defendant. And it robs him of the chance to potentially move to withdraw his plea, seek new counsel, until after everything is complete, when the standard is much higher on appeal or anywhere else. So that's why I think it's important, Your Honor. All right. That is the first issue, Your Honor. The second issue goes to whether it is ineffective for an attorney to not ascertain his client's wishes to a plea offer and simply allow it. Well, that issue, isn't that the kind that we normally say should be decided in a collateral proceeding when you can take the evidence? I agree, Your Honor. And I think the record is thin on this issue. It's there, but it's also there. I mean, the client does say, makes out, if you accept his comments, it's true. But we don't know what the lawyer's explanation is. Well, we don't know what the lawyer's explanation is. Wouldn't you need a hearing if the lawyer says a different story than the client? Well, I think that the district court should have held a hearing. The district court was presented with what I would term a prima facie case of ineffective assistance of counsel and error, and that something different would have happened, i.e., the client would have taken 120 months. I'm sorry. I'm getting ahead of myself, and I think very much away from your question. As I understood Judge Reinhart's inquiry, it was simply that on this type of issue, normally we don't give relief on a direct appeal, and it's handled that habeas, because then you can make a full record, and the government can make a record, and we're not guessing it, why the lawyer didn't go back to see him in prison, and, you know, did the lawyer expect him to call, or whatever. I agree. That is the correct state of the law, that these are generally disfavored on direct appeal. But you assume. I mean, obviously, we're not deciding that. I'm only one judge, but I'm sympathetic to Judge Reinhart's idea on that, if it is his idea, that we wouldn't try to address that on this direct appeal. So maybe you should try to argue your other grounds. And also, now you're down within your two minutes, if you want to say this. Oh. The last ground is voluntariness, and I think that that's the one that is most important here. I think my client came in, I think he said to the only person that he thought had the power to help him with this attorney-client relationship, look, this is what's happening. He didn't bring this offer back to me. I had no way to accept it. He thought he was in trial on the Friday before the Monday. He didn't know his attorney's name. And he keeps trying to address the district court. The district court does not pause. The district court keeps on going. And he was simply crying out for a little help. And we know from the record that this person has a fourth grade education. We know that they have no experience with the criminal justice system. And also, the judge basically, it went on down to a now or never proposition. If you make this plea now or never, you go to trial at 1.30 this afternoon, I believe is the quote from the transcript. But Judge Tanner did give him a clear choice. He could plead guilty or he could go to trial. Well, he gave him a clear choice, but it was you plead guilty now or you go at 1.30 this afternoon. Notwithstanding the other answers to Judge Tanner's question. Judge Tanner asked questions, but if the answers suggested that he didn't know what was happening, Judge Tanner didn't follow up. Good morning. May it please the court. I'm Douglas Hill, and I'm a Special Assistant United States Attorney for the Western District  And I was... You're not a Special Assistant. Pardon? You're not an attorney. You're a Special Assistant. Well, I'm cross-designated. I'm actually a Deputy Prosecutor for Pierce County, but I'm in effect on loan to the federal government to do drug cases that arise out of Pierce County. And that's what I do full time. I've appeared before you before. Here. The three issues before the court, I think, are really winnowed down to two. I agree with the court that I think that the matter of antithetical assistance at counsel really has to wait for 2255 because the record below is just so scanty on it that it's almost non-existent. It may be there, but we don't know what it is, and we can't really address that intelligently today here. The real issue, I think, here is the question of the stipulations. I agree that it would have been far better had the defendant on the record with the judge reviewed the stipulations, said, I agree with it. It gives me several years off of my time, and I like it, and I want it, but that didn't happen. I don't want to disrupt things, but I'd like to do jurisdiction first, if I might. Is that the issue of the juvenile? The subject matter of jurisdiction. Yes. I was just reviewing the order I found in my packet, and in reviewing it, and I don't do a lot of appellate work, but the way I interpreted it, I thought that that was a non-issue on appeal here today. So, frankly, I didn't do anything with it. I see. So you're not prepared to talk about it? No, I'm really not. I have the order here, but I'm not ready. It was without prejudice. The amendment said that they could go for the district court. It was a 3-D order, and they did not go to the district court. So it's... I think we'll go to the district court. We may do. If we want something further, we'll issue an order, but we might ask the other side, if they do have a motion pending, whether they're pressing it, and if so, what their authorities are, and if so, we'll give you a chance to respond. Right. On the issue of the stipulation, it was not the best way to do it. We should have gone over it with the trial judge, and nobody thought of it. The problem on appeal, however, is there's no prejudice to the defendant. To the contrary, it's a several-year reduction benefit, and the whole point in doing it was to carry out the spirit of the agreement between the attorneys, which was he's pleading to a drug offense, a methamphetamine offense, not a pseudoephedrine offense. Those facts were there in the plea agreement as to the pseudoephedrine, and we simply, because the matter was brought to our attention by probation that it could be relevant conduct, we agreed, no, that isn't what we wanted to do. We took it out, and it was to the defendant's benefit. Because there's no prejudice to the defendant, that would not be sufficient grounds for his guilty plea to be withdrawn. You cut out the data about so many pounds of this drug or that. Pseudoephedrine. Pseudoephedrine. He pled to a methamphetamine offense, conspiracy to distribute methamphetamine. And took out the part about buying the pseudoephedrine. Right. It was a matter of they were in the business of selling methamphetamine. They wanted to buy some pseudoephedrine from the undercover officer. That's what you use to make the methamphetamine. And in the end, because it was the government suggesting to the defendant, would you like this pseudo, we decided, no, this guy's really a meth dealer. That's what we wanted the plea to. That's the offer. That's what he pled to. And then when we realized later on that he could get several more years of time because of that pseudoephedrine, we simply agreed, no, that wasn't what anybody was looking for at the time of the guilty plea. The plea was to a methamphetamine charge, not a manufacturing charge. How about, could you please address the voluntariness issue? I mean, the guy, he goes, he's there before the district court, doesn't know the name of his lawyer, and he tries to talk about this 120-day deal that he never heard back on, or he says he never heard back on. Well, and that's sort of... The judge kind of says, look, it's a one-thirtieth a day trial. Are you plea guilty? Which do you choose? Right. And the trial judge was put in a no-win situation. You either dive into the plea negotiations or you don't. And judges that do dive into plea negotiations sometimes find themselves in trouble and being told you're not supposed to go there. This judge chose to ask straight up yes or no questions. Today's the trial date. You've got a plea agreement on the table. Do you want to take it? Do you not want to take it? The defendant, clearly from his answers, doesn't want to do it. Nobody wants to do it. And he has certain reservations and doubts because he knows what he's getting himself into in terms of a prison term. But faced with the choice of plea or trial, he made his choice. And he made that very clearly. There were a lot of questions asked by that trial judge about what about this, what about that, and he got very strange answers where the defendant keeps trying to divert off in this direction and that direction. And what the judge kept bringing him back to was, do you want to plead guilty? Do you not want to plead guilty? Because if you don't, you have a trial this afternoon. When faced with that choice, the defendant made a very clear choice, and he did it more than once on there. Yes, I'm here to plead guilty. I'm not going to try. And the co-inquiry satisfies, is it Rule 11? Yes. And it covers all the elements. In other words, he was told what the... There are certain basic elements you have to cover, and I think the trial judge covered every one of them. And granted, there were issues there about the, why can't I have this and why can't I have that? But then again, you're asking a trial judge to dive into the plea negotiations. And then again, we have case law that says, don't dive into the plea negotiations. So the judge is kind of in a no-win situation if that's what we're going to do. And I think the judge handled it appropriately. He said, what do you want to do? Plead guilty or not? And he did. And you'd be amazed how many defendants don't know the name of their attorney. And it's understandable when you're a foreign language speaker. Judge Tanner does this every time he takes a guilty plea. What's the name of your lawyer? Half the time. And maybe it's fear and shock and that type of thing. They're in a pretty tough spot there. And they're very nervous, I'm sure. And half the time when they're asked, what's the name of your lawyer? They look up the list. It happens very frequently. I don't put any real weight on that. If the lawyer didn't know the name of the lawyer's client, I would put some weight on that. I'm happy to stand on my pleadings unless you have more questions. Thank you, counsel. Thank you. I will give you the two minutes you have used. Thank you, Your Honor. First of all, there is not a motion pending on that age issue. However, I would request leave from this panel to make that motion orally right now. To our court as opposed to the district court? To this court, yes. Because I think the issue is, how does the Ninth Circuit deal with the question that Judge Reinhart made at first? And this case does present this square on, and it's exactly in conflict with another circuit. Anyway, I would make that request, and if granted, would renew that motion. Well, as I understand it, you made a motion. Yes. I mean, you told the commissioner to deny it without prejudice. And said you could make a credio motion. Said you could make a credio motion to the district court, which wasn't done. So, all right. Whether a motion is pending or not pending, I'm not sure. All right. Well, we have your request, and what we'll do is, if we need briefing on that, as I said, we'll issue an order, and then we'll give the government a chance to respond. Okay. I just have three quick points. Mr. Hill talked about how it would require the judge to dive into plea negotiations to inquire about the 120-month offer. Having a judge not participate in plea negotiations is a very important policy. However, I think a more weightier policy is for the, I mean, the purpose of the Rule 11 hearing is to make sure that defendants' plea is knowing and voluntary. And the judge, very simply, had officers of the court in front of him could have said, is that true? You know, perhaps the defense attorney wouldn't have answered. But, he could have inquired into it, and I think could have, I think that is a better way to do it, because I think the judge, the district court's larger responsibility is to ensure to, excuse me, may I finish my sentence? Is to effect, it's to make sure that it, you know, the client has received constitutionally appropriate representation. The district court certainly didn't give an empathetic response to the concern of the appellant. Why didn't I get 120 months? And what's the legal handle that requires them, what's the legal ground, I guess, that would require the judge to say more? You're saying it's the voluntariness requirement. I'm saying that the, right. To be intelligent and voluntary. Right. To understand the purpose of a Rule 11 proceeding is to know that it goes to assure, the district court is assuring itself that a plea is knowing and voluntary. And, to do that, when presented, when presented with this evidence about this previous offer in a potential, in a potential constitutional violation, the district court should follow up on that. If we were to decide that, although the elements of Rule 11 were satisfied, that sort of somehow some spirit of it wasn't, if we gave relief to the appellant on that issue, then what happens, he goes back and he gets the trial? And the question whether he pleads again? No, he gets a chance to have a meaningful attorney-client relationship, and if that includes the trial, that includes the trial. Okay. Thank you, Your Honor. Thank you. Case 330 will be submitted. The next case on the calendar is Sanders v. Ryder. Thank you. May it please this Court, good morning. My name is Michael Kars, and I represent the petitioner, Daniel Sanders, in this habeas corpus appeal. It's an honor to represent Mr. Sanders. It's an honor to represent a person who has a, have bared his innocence, pro se, through many, both state and federal proceedings. And, I think that this Court has raised some issues that it's asked for briefing on, that we've briefed on, and I want to get to them. I think what's important for this Court to consider is the threshold issues on the waiver of the right to appeal. The question is, what actually transpired, what were the issues that led to the, to the waiver of appeal? That's one of the critical issues that I think has not been fully addressed by the state court or the district court. In particular, I draw this Court's attention to the issue that Mr. Sanders raised, pro se, regarding how he termed it prosecutorial vindictiveness, and there's a few other terms of art that he used which we may not have chosen. But I think the argument that he was trying to make,  is whether or not his waiver of the right to appeal is voluntary. Now, I also have argued in briefing, and he's argued that the knowing issue on his waiver of right to appeal was not appropriate and was not at the proper weight. But I think the voluntariness has not been addressed. And I think that the issue that goes into the critical elements here is the relationship between him and the prosecutor in question, the timing at which the author of the waiver of appeal came about, and the underlying criminal charges that the prosecutor claimed that she was going to bring against him when they happened. I think that that's critically, factually, because if I draw this Court's attention to the fact that the alleged witness tampering occurred in a pre-trial hearing, not during the trial, and also the issue of the perjury, the question of what he said on the stand while during the trial, that, looking at the facts, it's really, you know, he actually, it could have been taken many ways, but whether or not there was actually a perjury charge there, I vehemently disagree with. I have a question for you. This is a little outside of my experience, and I don't have that many years of it, but it's the first case I've seen where there's a plea bargain before sentence. Sort of like, if you give up your right to appeal, we'll make such and such a recommendation. Is there any case squarely in point on whether that's permissible? Apart from the details of this case. Any case upholding such a plea bargain, which is, it seems to raise a whole bunch of issues. Yeah, there is, although I think that the briefing actually went to the point of agreeing that there was the right to waive, I think there's a Washington state court, state v. suite, I think that was cited in the briefing, if I remember correctly, on the fact that the Washington state courts have certainly given the right to waive the right to appeal, which brings us to an interesting issue, and as I would say, it is okay, you go through a trial, you've averred your innocence, and I think the briefing talked about this, and you get found guilty, and there's arguably, as we've argued here, that leading to this finding of guilt was ineffective assistance of counsel, which then gets into another complex issue. But the thing that I'm troubled by, but I don't really know the answer to, quite honestly, is what level of knowledge, for example, what level of volunteerness comes into an issue of the waiver of a right to appeal? Looking at a plea bargain before trial, you know, the individual has supposedly all information before him or her to make an informed decision, and has a period of time, and can look at it with at least some, hopefully, dispassion with assistance of counsel. This is much less structured, I mean, it's like, give up your right to appeal, or we're going to throw the book at you. Right. And my question, though, which I don't know if you were answered directly, is this, I know that there are cases saying a person can give up their right, can waive their right to appeal, but are there any cases saying that they can waive their right to appeal in exchange for a bargain that the prosecutor will recommend a low sentence range, or the prosecutor will not make other charges against them? I believe there must be, but I can't answer that question at this moment, Your Honor. I've got the following puzzle, and I don't think this is your fault, it's just that the law has got all these tangles to it, or cross-cutting things. One of the things your client wants to allege or assert is ineffective assistance of counsel. The state is saying, but you waived your right to appeal. How far does that waiver go, assuming that he is saying, well, I had ineffective assistance of counsel, which put me in the position where I waived this, and the ineffective assistance of counsel is inextricably linked to this asserted waiver. What happens if he asserts ineffective assistance of counsel in the state court of appeal, and indeed in his petition to the Washington Supreme Court, is that, does the waiver stick, is that enough to get around it? I mean, how do I interrelate the ineffective assistance of counsel and this purported waiver? That's an excellent question, because, I mean, that was one of the basic issues that I had to tussle with, because it, I mean, this is kind of where I opened, and I'm trying to lead into the problems that this case gives both procedurally and in terms of the law, because, for example, I could argue that if I have, if I'm in trial, and I have ineffective assistance of counsel, and then somebody says, look, and I'm found guilty, and then somebody says, look, you, you know, you either have this choice, you waive your right to appeal, and I'm there because of the ineffective assistance of counsel. Then does that give the basis in fact to argue that? Well, there's two different stages at which you can have ineffective assistance of counsel. The question is, well, the main question that's briefed and argued is whether counsel was ineffective at the trial in not calling witnesses and not putting on a case. That doesn't have anything to do really with whether counsel was ineffective at the time of the plea agreement. You're arguing now, I think, that he was ineffective in allowing, not the plea agreement, the sentencing agreement. You're arguing, or are you, that the counsel was ineffective in allowing him to enter into an agreement that he would waive his right to appeal? If I may clarify the record, as I understand it, first off, it's absolutely clear that Mr. Sanders, at least, you know, through various points, argued his trial counsel was, was ineffective, and that goes to his claim of innocence, and then it raises the issue of cause and prejudice, and if the ineffective assistance at a trial level can lead to prejudice. But as for his appellate counsel, he did also argue, at least he attempted to argue, I would say, that his appellate counsel, or not to strike that, because he had new counsel for his post-trial, his post-trial counsel was ineffective, and I think this also then also dovetails in, as it often does, with the issue of whether or not it was a knowing waiver, because in one of the issues... But your first argument, then, that you have to reach is that your, the post-trial counsel was ineffective in waiving the ineffectiveness at the trial level. I, I, I respectfully do not reach that same conclusion, Your Honor, and the reason is, is that I do not believe that you have to make an ineffective assistance claim if you're arguing that the voluntariness element of a waiver has been violated by the circumstances of the trial level, at least that's what I... How does it violate, how do the circumstances of the trial... Well, because... ...make your agreement to waive your appeal at your sentencing? How does it, how are they initiated by what happens at the trial? Because... I'm going to give you probation for first-degree murder. And you say, well, I have a lot of errors in first-degree murder, but that's a good deal. And you've got a great counsel who gets you the best deal in the world, and they say, but you won't appeal. That can still be set aside because of the errors made at trial? Well, it would go to what the colloquy was at the waiver and sentencing area, and that is... Isn't it, aren't you, don't you have to start by saying there was something wrong? You have two choices, it seems to me. You either have to say there's something wrong with that agreement, at least at sentencing. It was based on ineffective counsel, and it should be set aside. Or you have to say that he can't waive ineffective assistance of counsel at trial, for some reason. But that's a different argument. Sure. How about the following argument? It is to say, let's assume, although it's a contested point, let's assume that his sentencing counsel, I'll say it that way, was effective. But let's assume that his trial counsel, and there's some evidence to support this conclusion, was ineffective. The ineffectiveness of the trial counsel puts the defendant in a very difficult, even impossible situation, from which even competent counsel cannot satisfactorily extract him. Therefore, when he makes a deal given the circumstance that he's already been convicted, that allows the waiver. Well, why is that not directly a consequence from the ineffectiveness of the trial counsel? Whether his sentencing counsel was competent or not, he couldn't save him from that consequence. Well, that's a way to get to the second point, which was to say that you can't really waive the ineffectiveness at the trial level on this kind of a plea, on this kind of a deal. And Judge Fletcher is giving one way to get there. You may have others out there. Well, that's the difficulty with the case, in a sense, of trying to argue it, is because there's various ways to get there. And one of the ways to get there is, which I said hadn't been addressed at the various court levels, was the issue of the relationship with the defendant, with the prosecutor, and exactly how this particular sequence of events came about that he ended up taking the waiver. And, I mean, to have a prosecutor tell this individual that, based upon asking for an exception, they're going to end various things, will be the end for the rest of their life, I mean, I would argue that that exceeds the scope both of the reality of the sentencing under Washington laws, and it exceeds the prosecutor's charge under the prosecutor's, you know, duty to do justice, under, you know, ethical issues, they shouldn't, they're just overreaching. And that removes the voluntariness. To what extent do the habeas standards require, if at all, that this be clearly established under the Supreme Court law? As far as the voluntariness issue or the overreaching? As far as what occurred here, if we were to say you can't have this kind of an arrangement, that you can't give up an ineffective assistance claim in this kind of a sentencing proceeding, or that the facts here are such that he was forced into an agreement that is not a valid agreement, to what extent are the habeas rules effective? I think it's clear that the cause and prejudice standard can apply if you're arguing that the cause of my client's waiver was the ineffective assistance of counsel at the trial level, and for which he suffered prejudice. I think that as regards to the other issue, I mean, the voluntariness... How about just the issue of whether, let's put aside personalizing it to this prosecutor in this case. I realize a lot of your brief argues that way, but let's just take the general proposition for a minute. Whether due process precludes a bargain of sentencing that requires a defendant to give up an appeal in exchange for a low recommendation, or in exchange for the dropping of potential ancillary charges that haven't yet been made. He hasn't been charged with perjury or whatever. That's correct. So if that were the issue, is it precluded by the Supreme Court's precedent that says you can't give someone a stricter sentence without particularized reasons in punishment for having had an appeal the second time if they're convicted after remand? Does that mean if you can't punish someone for taking an appeal, then you can't threaten to punish them if they don't waive their appeal? It seems to me that's kind of the gist of this plea bargain or sentencing bargain was, we're going to hammer you to the maximum extent possible if you don't waive your appeal right. I just wonder if, and not criticizing the prosecutor, maybe the prosecutor does it reasonably, and they're just saying, we're going to urge the maximum consequences for you for everything. You've done this wrong if you don't waive your appeal. No impropriety on behalf of the prosecutor of overreaching it, but just the concept, does that satisfy due process? And if it doesn't, can we say it doesn't under clearly established law, clearly established by the Supreme Court, which I think is the ADEPA standard in this case. It would be, now understand that I've also argued the ADEPA standard does not apply to issues that have not been addressed in the lower court levels, including the state court. And the prosecutorial issue of, you know, and I don't personalize this side or whatever as far as this individual, but this has not been argued. We've never ruled as a court that the ADEPA standard doesn't apply to some issue that wasn't argued. Well, I thought that there was a case, but anyway. My issue on here, I mean, we're talking about a North Carolina v. Pierce type argument. And I think that it is clearly established under Supreme Court law that there are certain circumstances where there is, shall we just characterize, maybe a little overreaching. And that under that kind of standard, where one is threatened by an exceptional sentence in exchange for waiver, I think that the North Carolina and progeny with Blackridge, I think there are cited a few cases would clarify. Now, I'm not sure if I have four minutes until the 20 minutes are up. Okay. We won't. What do you want for rebuttal? Excuse me, I asked for four minutes, Your Honor. We'll give you four minutes for rebuttal and let's move to questions. Okay. How does this differ from the normal case in which defendants give up their right to appeal? For one, I mean, generally speaking, one gives up a right to appeal in the state of Washington if one is, let's say, pleads guilty and is sentenced within a standard sentencing range. The difference is that you cannot appeal the actual type of sentence you receive within a standard sentencing range under determinative sentencing. But if you do go to trial, you get an automatic right to appeal in the state of Washington in the state constitution. I see it as very different in that we are looking at someone who said, I'm innocent, I'm going to trial. They get convicted. How they get there is one of the arguments that we've made. When we take an ordinary federal case, we have a waiver of the right to appeal in connection with the sentencing. Isn't that the same kind of hammering that Judge Gould talked about? We say, if you want this kind of a sentence, you give up your right to appeal. And we say, oh, that's fine. Isn't that the normal rule that they prosecute the constituency if you want this kind of sentence, give up your right to appeal? I understand, but I would argue that the... I don't happen to think that's right, but that's the rule. But then you're giving it up in connection with a plea of guilty, correct? There was a guilty plea. Here, there was never a guilty plea. That is correct, and that's what I think... Where does that lead you as a matter of constitutional principle or any kind of principle? How do you distinguish it is what I'm asking. I don't know if I'm saying the facts are different. Yes, I... What principle is it that sends you? I think that your honor's point is well taken, and I have to say that the North Carolina v. Pierce chain of arguments where, for example, if you win your right to appeal and then you come back and they give you a higher sentence without justifying it factually, then that is considered a violation of due process. And I hear you have a situation where you're threatened with a higher sentence unless you give up your right to appeal. I would say that the North Carolina v. Pierce arguments that my client has averted through the whole period of his pro se litigation by name is appropriate to this situation. I think it's a pretty good argument. It's a little... If it were on direct appeal, then I would think it would be much stronger because it's a little bit by analogy, but given the difference with North Carolina v. Pierce and the ADEPA standard, does that foreclose us? That's the question in my mind. In other words, can we say that the principle is clearly established under Supreme Court precedent when we're applying the principle in a slightly different context? I think if it was a situation where North Carolina v. Pierce was only used in like a couple of situations, a couple of Supreme Court cases, maybe one, maybe two, per se, that would be arguable. But because North Carolina v. Pierce is replete through case law as the standard under which these various scenarios are judged and its expansion by the Supreme Court and the Court of Appeals, including this court, would argue that North Carolina can't be so expanded. I noticed that now where I'm in the red. Okay. Well, we'll give you some more time after the regular evidence segment. May it please the Court. My name is Greg Rosen. I'm an Assistant Attorney General and I represent the respondent, Leslie Ryder, in this matter. The state court's enforcement of the appeal was not unreasonable. As the United States Supreme Court has held in the case of Jones v. Barnes, there is no constitutional right to appeal. This court reiterated that holding in United States v. Anglin. But there's no constitutional right to appeal. But if a state grants a right to appeal, there's a different issue, which is can the state require the accused to give up the right that they have granted in consideration of not being punished in some way? And I'm sort of characterizing it against the state's position. But I'm very much troubled by this case. If it were on direct appeal, I would apply North Carolina v. Pierce. And I could be wrong, but I would think it would be a fair analogy here. I'm not sure under a D, but let me ask this. Is this a general practice? I mean, is this like an odd case that has just occurred for whatever reason that it came up this way? Or is this a routine practice, if you know, of prosecutors in this state asking defendants after they've gone to trial and not pleaded guilty to give up their right of appeal? I cannot speak to the specific practice in Clark County, Washington where this case came out of, Your Honor. I used to be a deputy prosecuting attorney. I will tell you that it is not a regular practice. I have seen it done, but I cannot say that it's done in every case or even on a regular fashion. I think, you know, here, I'm trying to remember if this originally went to a screening panel, but I think this is and I'm really troubled by it as a general practice. I'm not buying the argument that the particular prosecutor here was vindictive or anything like that. I just wonder if this is a practice that's precluded by due process. I don't believe it's a practice precluded by due process, but what I think is important to remember, Your Honor, is to look at the entire scenario here. There's been several questions from the bench. Mr. Carr has made certain comments regarding Mr. Sanders being threatened. This was an agreement. There was another party to this agreement with the state. What was the state giving up? There's been much talk about being threatened. I would respectfully submit there was no threat. The hard reality, life is full of tough choices, but the hard reality for Mr. Sanders at that time was whether to guarantee there would be no new charges brought, to guarantee that the state's recommendation would be the low end, 108 months. It seems sort of bizarre though. Normally when there's a charge made against the defendant, we have this intricate process under Rule 11 to make sure the defendant knows what's the worst case, what they're charged with, what they can go to jail, what their maximum time is. Here, like these other charges, like we'll throw the book at you, we might charge you with coercing a witness or whatever, or perjury, there's no delineation of the elements of those charges that he's making a deal, giving up something to be freed of them. There's no delineation of their elements or the maximum penalties for him. It's just sort of in this vague, nebulous dimension of the prosecutor basically saying we're going to throw the book at you if you don't give up your right to appeal. Your Honor, I would respectfully disagree with the court as far as it being vague. If the court will look at SDR 368 and 369, I believe that is a letter from Mary Gaffney, who was Mr. Sanders' attorney at the time that the waiver of right to appeal was conducted. That letter indicates, as I recall, from Ms. Gaffney to Mr. Sanders, laying out specifically what the prosecutor's new charges might be. As I recall, Ms. Gaffney referred to them in her letter as to the elements of those particular possible charges. Well, there's no process before the court about those charges in that charges weren't made. Those charges have not been filed in that information. That's correct. Could they have been filed by information or would they have to go to a grand jury? I'm not sure what that specific practice was in Clark County. I will tell you from previous experience of my own, in Thurston County, you had to establish probable cause to a Thurston County Superior Court judge before information could be filed. The prosecutor couldn't just in an unsolicited, unilateral fashion sit in their office and say, well, I think perjury is going to work here, or what have you. That doesn't work that  I'm sure it doesn't work that way in Clark County. It's bothering me a lot as an awful lot of unstructured power for a prosecutor. It's unreviewed by the court. One of the things that bothers me about this, and I'm not sure it's the case here, but it bothers me if there is available practice that after the trial has taken place, after a guilty verdict has been rendered and the only issue remaining in the       this without having to go to a grand jury, then I think that's a good practice. I don't think that's a good practice. I don't think that's a good    Because, again, if you don't go to a grand jury without sort of accepting the deal, the prosecutor can protect an awful lot of terrible things that went on at trial. But this is different from, I'm going to plead, I'm going to plead before trial. There are a lot of things we don't know. Here we're pleading after trial. So both sides, if they're well advised, they know their vulnerabilities. And a prosecutor knows, you know, there are about ten things that went wrong in this trial and I don't want an appeal. I'm going to stay away from the word threat. I just reread the Godfather. I'll say, I will reason with this defendant. And I'll make him an offer he can't refuse. And the offer will be, I will give you, you know, I will get a sentence of 120 months here and in return I won't do the following things, which I have a legal right to do. The prosecutor is doing it because he knows that trial is full of holes. But the defendant, given the nature of the bargain offer, he says, okay, I'll take it. I don't know that that happened here. But what strikes me is if this is a normal practice or permissible practice, that danger exists. I'm understanding fully the uncomfortability, if that's such a word, from the bench, about the discomfort of this bench with this process. And again, Judge Gould, I don't believe it's a general practice. I have seen it happen. But I have to emphasize to this court there was a choice by Mr. Sanders. He could have told the prosecutor, no matter how attractive that offer was, we'll recommend an exceptional sentence down of 36 months, because the prosecutor thinks to herself, hypothetically, and I'm making this a hypothetical posit. Gosh, when I questioned that witness, a lot of inadmissible stuff came in. Well, when I put that at the evidence, that wasn't done correctly. There wasn't enough evidence. So I said, well, let's just put it to bed. Mr. Sanders could have told the prosecutor, I don't want it. I want to maintain my right to appeal. But what comes clear through in that colloquy, and it is a, I would grant you, a tortured colloquy, what comes through is Mr. Sanders wanted the best of both worlds. He wanted everything on his case. That's an example. You say the prosecutor says to the defendant, the prosecutor knowing he's got real problems on appeal says to the defendant, you know, this is a capital case. I'll give you life if you don't appeal. Now, the defendant, if he wants to appeal, no matter how good his appeal is, he's   executed if he drives a bad panel or he's in a bad state. You say there are life-threatening problems. Well, there are life- threatening  There are all of our choices, and so is the legal system. But, that would not be, that's sort of the extreme of what Fletcher is suggesting to you. If that's an opportunity you really can't refuse. Who can gamble their life on winning an appeal in trying to run a court? Should that be the kind of choice you have to make? If you really shouldn't have been convicted. But it remains a choice, your Honor. It remains a choice. Mr. Sanders could have told the prosecutor. This was being done . Well, as you say, this explains the discomfort, whether it should be permitted. The prosecutor's got a lot of power to start with. You can go to him and say, look, I'm going to try you, try your wife, try a lot of people on these charges where you'll end up with a life sentence, or you can plead guilty to something where you've got a maximum of five years. And you get the same kind of risks there. This one is a little different from one we've ever heard of before. This may be one where somebody should say, this isn't the kind of thing that should happen, but whether we can do it or not, I don't know. I've got a different question, and this may allow us to get around some of these difficulties without going at it directly, and that is, obviously, what Mr. Sanders really wants to do is to be allowed to present an ineffective assistance of counsel argument, because he's now saying, I've got all this stuff that should have been presented at trial, and if it had been presented at trial, I probably or maybe even never would have been convicted. Now, we haven't tested it, I don't know if it's true, I don't know if he has it or not, but he says he has that. And if it truly has it, his lawyer at trial was lousy. I would say there's a pretty good chance of showing an ineffective assistance of counsel if he's able to get there. Now, why can't he present an ineffective assistance of counsel argument? At what juncture? Now, to a federal court on habeas. Well, several reasons. One, this court's certificate of appealability, or rather the certificate of appealability that was issued by the district court doesn't have ineffective assistance as one of its claims. That's not one of the issues before this court that was granted. He waived his appeal. So unless that waiver's invalid, how could he assert it? Well, Your Honor, this court has no subject matter jurisdiction. If the issue being raised now was not in the certificate of appealability, moreover, the issue is totally unexhausted. Well, I think we can expand it. There's not a lack of subject matter jurisdiction because we can expand a certificate of appealability. But there was no request from Mr. Kars to do so, as I recalled it from the docket. That's not subject matter jurisdiction. That's a question of our rules as to when it should be presented and how it should be presented. And I don't think that's subject matter. In fact, there's a question of whether it might violate one of our rules about how you request expansion. But no request was ever made, Your Honor. No request was ever made from Mr. Sandberg. Well, I said didn't he in your brief response. I understand it's a real point. And I don't want to just blow by it and say I'm going to ignore it. But I'm going to ignore it for now. Assume that we get past it. Then what? The claim is completely unexhausted. If you look at Mr. Sanders' petition for effective  counsel, none of those claims, none of them had anything to do with ineffective assistance of counsel. I'm reading from that petition, page 346, Mr. Sanders was denied the effective assistance to counsel. He was also denied his constitutional rights to be a trial witness. The rule of appellate procedure 13.7B in Washington court states that the Supreme Court will not consider issues in the petition unless they are listed. Those issues were never listed. They were thrown in the body of the petitioner for review. In Washington court the petitioner must present their claims to the state's highest court. He didn't list those claims in the state's highest court. Those claims are unexhausted. These are the right words. That's not enough. According to the U.S. district court the judge also found that those claims were unexhausted. I'm simply going there for additional support for my position. Those claims are listed in the body. That's correct. Which is not, as I understand it, in compliance with rule of appellate procedure 13.7B which requires them to be listed. Is that rule consistently applied in the Washington state Supreme Court? In my view it is. It's a question of fact, is it or is it not? That's asking me to speak to the entire universe of cases before the Supreme Court. It's a relevant question. If it's not, I don't want to blow this by as if it weren't an issue. I take seriously what you said. Assuming we can get past the COA and assuming it is properly presented in the sense of the petition such that for a pro se petitioner the Washington Supreme Court saw it, then what? Is there something else that prevents us from getting to ineffective assistance of counsel on habeas? Nothing that comes to mind right now, however, I think those two points are not insignificant. I'm not quite sure I follow. Other than the waiver of the right to appeal? That's what I'm wondering. The waiver of the right to appeal is another reason why he can't do it on habeas. This is not appeal, this is habeas. Did he waive the right to appeal ineffective assistance? And if he did waive the right to appeal ineffective assistance, did he waive the right to  If  waive the right to appeal, otherwise, he gave up his right to direct appeal. There's nothing in that document which speaks to the waiver of a collateral attack. Nothing stopped Mr. Sanders from filing a personal restraint petition. If he filed a collateral attack, wouldn't it have been dismissed if they upheld that appeal waiver? Are you saying the appeal waiver would only cover direct appeal and not state habeas? I'm saying that the waiver of appeal that he signed covers only direct appeal of his judgment and sentence. It says nothing about prohibiting him from filing a collateral attack. Does it by its terms say it only applies to direct appeal and not to collateral attack, or does it say I give up my right to appeal? It says I give up my right to appeal. I'm sure it's in the record. 415, 416. Do you have it right in front of you where you can read it to us? Isn't a collateral attack just another form of it's not the direct appeal, but isn't it still an appeal? No, Your Honor. I would respectfully submit that a collateral attack is a collateral attack, and I don't mean to be cute, but a collateral attack is an entirely new cause of action. The appeal in a case like this is a continuation. If that's true, then you're saying he could apply for habeas relief if he exhausted it? Yes. That's your position? Yes. Nothing stopped him from filing a PRP. He didn't do it. So the prosecutor's deal here is kind of an illusory deal. It would preclude him from direct appeal, but wouldn't stop him from a state collateral proceeding or a federal habeas claim. I think that would be factually correct. But that doesn't seem like that could be what the prosecutor had in mind. It may not have been. Maybe I'm asking a  but I'm not sure that we don't reach this habeas two-process issue about whether this could ever be done. It would mean that issues that have to be appealed are waived, but issues that can be presented directly for the first time in habeas are preserved? What I'm trying to find out is what this agreement means. It means if any issue that's subject to appeal is barred... I have the stipulation on waiver appeal right here, Your Honor. No, I have Judge Fletcher give me a copy. Okay. It says you waive the right to appeal the judgment and sentence on a equivocal waiver. Right. That's what I stated earlier. And that you read as meaning anything that's subject to appeal or has to be appealed is gone. But anything that can be presented directly in habeas is preserved. Actually, I didn't understand that. I understood you to be saying that even if it could have been raised on direct appeal, it wouldn't be waived if you brought it in a PRP. That's my position. Well, let's assume you can bring it in a separate collateral proceeding without appeal. Anything that had to be appealed is barred. And, therefore, anything that requires you to appeal, you lose. But anything that can be presented   habeas is barred. Well, I would respectfully submit that this Court's holdings in Roberts v. Arav and Nolte v. Peterson speak to the issue. This Court in Roberts, 847 F. 2nd at 530, stated, and I'm quoting, the apparent futility of presenting claims to state courts does not constitute cause for procedural default, citing Engel v. Isaac, which, as the Court knows, is a United States Supreme Court case. And as the United States Supreme Court stated in Isaac, and, again, I'm quoting Engel v. Isaac, rather, the defendant perceives a constitutional claim and a state case law on what may be presented on direct appeal with respect to ineffective assistance of counsel. The sort of ineffective assistance of counsel claim he would have liked to present here, the failure to call certain witnesses and so on, actually, that sort of claim has been entertained on direct appeal by the Washington State Supreme Court. Am I right on that? That is to say, going a little bit outside the record. Not very much, but a little bit. My understanding is the Washington Supreme Court has been willing to do that on direct appeal. You don't have to go with a personal restraint petition to expand the record just a little bit for an IAC. In fact, this was cognizable on direct appeal if the waiver of appeal were not in there. So he could have done it absent his waiver of appeal. What happens if the waiver of appeal is itself the reason for  waiver of appeal? I realize that counsel has not been effective here in terms of advising Mr. Sanders. In fact, during the colloquy, the colloquy makes clear that she advised him that the counsel had spoken for weeks. You heard my response when your adversary was up. It may be that the second lawyer is effective. I'm not saying yes or no, but it may be that the second lawyer is effective, but the first lawyer was so disastrous that the second lawyer is in such a position that what can I do? I don't agree with the court's contention, but I understand where you're going. At a certain point, I would submit a person has to live with the consequences of their choices. Again, this court has, with all due respect, is viewing this issue in a very perhaps unbalanced fashion, that Mr. Sanders could have told the prosecutor to go fly a kite. He said I don't want any more charges. He wanted everything his way. You can tell the Attorney General that Judge Gould said you should get the rest of the week off. We're all interested in different things, given the unusual nature of this. Here's my question. Is there any case that holds that due process is not offended by a post-trial waiver at sentencing, a right to appeal, by a defendant who has maintained his or her innocence in consideration of a low sentencing recommendation or a prosecutor's statement that they won't bring other charges? Is there any case that sustains that type of arrangement or procedure? Not a case that says you can waive your right to appeal generally, but a case that says that particular scenario or procedure that's alleged here does not offend due process? I'm trying to recall the facts of the case called U.S. v. Navarro-Batello, which is this court's  at 912 F 2nd, 318, a 1990 decision. It cited town of Newton v. Roomery, which is a U.S. Supreme  case. It does state specifically regarding or address specifically the issue of a low-end recommendation. What it does state, and I'm quoting, accordingly, if it is not a due process violation for a defendant to waive constitutional rights as part of a plea bargain, that a defendant's right to   post-trial waiver. But you're saying it's not at this step in the procedure. You could waive your right to appeal. You could waive your statutory or constitutional state rights to appeal when you make a plea bargain. But is that case one that does not involve a     involve a plea bargain? Or does it apply to all state prosecutors that they don't do this if we don't make a ruling? Well, I guess I would merely reiterate that again under Jones v. Barnes, a U.S. Supreme Court ruling, the waiver of a state created right is not a federal constitutional claim. It's not even cognizable under a DEPA. In conclusion, I see my time is well up. I would ask this court to affirm the decision of the U.S.  Court on this case. We haven't even asked a question about it. So don't feel that it's only those three issues. I understand. If I had more time, I would stay up here. Thank you. We could give Mr. Worcester a chance to respond. I believe there was a further issue in that case about the judge taking an active part of the colloquy, but I would remind the court that the judge was at least somewhat involved even though not intentionally in terms of what would have happened. The real issue is, at some point in time, is there a situation where there may be considered overreaching? Just do the procedural posture of the case. I think that's what the court is raising. At this point in the case, the due process concerns, given the fact that someone has    misdemeanor crimes, and we talk about knowing intelligent and voluntary in terms of plea agreements. In that situation, you haven't been to trial, but you haven't had adjudication on the merits. In this situation, there has not been adjudication on the merits or not. Which brings us to the merits issue, which is ineffective assistance of counsel. Procedurally speaking, I was asked to brief certain issues, but there was room to expand according to the order as I saw it. The issue of ineffective assistance of counsel at the trial level was so critical to where we are today that I did brief that issue. I would ask the court to consider it on an oral motion because it was so critical, but I thought because of the order it was not required. Just to be clear, you would like to move if such a motion is necessary to include ineffective assistance of counsel? Absolutely, Your Honor. I did think I briefed some cases which discussed how you expand COAs and the court's ability to expand on their own too. Another question, if we were, I don't know if we would do this or not, but if we were to decide this type of post-trial sentencing bargain offends due process under clearly established Supreme Court law, then what happens? In other words, that he had a right, Mr. Sanders had a right to an appeal. Then are we supposed to consider his appeal? Are we supposed to send it back to the state and say now let him have his appeal that he would have had absent this waiver? Well, I know that my client continues to appear as innocent. I think that he would accept anything that would give him a chance to state his innocence for the record with witnesses. I know that there are several options, and because the issue hadn't been developed, although presented to the state court in terms of ineffective, the district court can have an evidentiary hearing, or actual innocence, the standard, or it can't. I think that my client would prefer that this case go to an evidentiary hearing to determine on the merits whether there was indeed a case and what the situations were involving the particular actors. In the district court? Yes. Yes. But you would say we wouldn't just send it back and say there should be relief that he gets an appeal in the state court system? Well, I would say that if you overturned it on the basis of a Pierce violation, then certainly in all honesty, there's various options this court can employ. I would argue on the basis of a sloop, that then the district court could also consider an evidentiary hearing if the court reaches that issue. But either way, we'd like to do that. One last thing, just choice is that. I think it is clear that there is issues of timing and whether or not there was real choice. Thank you. Thank you,  Thank you both very much for a very helpful argument. The case case case case case case case case case case case
judges: Reinhardt, W Fletcher, Gould